
RECEIVED

JUN 3 2011

LEONARD GREEN, Clerk

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
## CASE NO. _11-503_

ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:10-cv-062-KKC

COMMUNITY TRUST BANCORP., INC.,             PLAINTIFF,

v.

COMMUNITY TRUST FINANCIAL CORPORATION,
COMMUNITY TRUST BANK, and
COMMUNITY TRUST BANK OF TEXAS,           DEFENDANTS.

## PETITION FOR PERMISSION TO APPEAL

Scot A. Duvall
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
401 S. Fourth Avenue
Louisville, Kentucky 40202-3410
(502) 584-1135 (Telephone)
(502) 561-0442 (Facsimile)

*Counsel for Petitioners,*
COMMUNITY TRUST FINANCIAL
CORPORATION, COMMUNITY
TRUST BANK, and COMMUNITY
TRUST BANK OF TEXAS

Dated: June 2, 2011

## INTRODUCTION AND RELIEF SOUGHT

Pursuant to FED. R. APP. P. 5 and 28 U.S.C. § 1292(b), Petitioners/ Appellants, Community Trust Financial Corporation, Community Trust Bank, and Community Trust Bank of Texas (also collectively referred to as "CTB"), defendants in the district court, file this Petition for Permission to Appeal. The district court and Petitioners agree that immediate appellate review is appropriate in this case. The question presented, concerning the limitations of personal jurisdiction and the requirements of constitutional due process applicable in the context of Internet websites, has not been settled by controlling authority. The district court has noted that "the law regarding personal jurisdiction in the internet context is continually evolving." Resolution of this question will significantly advance the resolution of this lawsuit.

Therefore, Defendants respectfully submit this Petition for Permission to Appeal, and requests that the Court enter an order granting Petitioners permission to appeal.

## QUESTION PRESENTED

The district court found that there is substantial ground for difference of opinion as to "whether the Defendants' act of sending passwords to Kentucky residents to provide them with online banking services establishes a prima facie case of personal jurisdiction in this Court." Petitioners respectfully suggest that the

following (set forth in their Motion to Certify for Immediate Appeal in the district court) is an appropriate statement of the question presented, taking into account the pertinent jurisdictional facts: *Whether Defendants' e-mailing online account access passwords to four customers who once resided outside the forum state and later moved to the forum state, at the request of such customers after they moved to the forum state, are in the nature of fortuitous or attenuated contacts compelling dismissal of the Complaint for lack of personal jurisdiction?*

## FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED

In the civil action currently stayed in the Western District of Kentucky (on motion of Petitioners granted by the district court), Plaintiff asserts claims of trademark infringement against a Louisiana corporation and its subsidiaries. Plaintiff, a Kentucky corporation, alleges that it has used the mark COMMUNITY TRUST since 1995. Opinion and Order dated February 17, 2011 ("February 17 Order"; Appendix 1 hereto) at 1. In the district court below, Petitioners (collectively "CTF") have noted their use of the mark COMMUNITY TRUST BANK since 1986 in connection with the provision of banking services. Plaintiff seeks to hale Petitioners from Louisiana to the district court's forum located in the Eastern district of Kentucky.

Defendant Community Trust Bank is a wholly-owned subsidiary of Defendant Community Trust Financial Corporation, both of which are Louisiana

corporations.[1] February 17 Order (Appx. 1) at 1. The Petitioners are not transacting, nor have they ever transacted, business in the Commonwealth of Kentucky. *Id.* at 5. Petitioners are controlled by a board of directors, which has no physical presence in Kentucky. *Id.* at 4.

CTF maintains an internet website at <www.ctbonline.com> (the "Website"). *Id.* at 2. No loan account, deposit account or account of any type may be set up through the Website. *Id.* at 5. The creation of any account must be made directly at one of CTF's branch offices located in the States of Louisiana, Texas, or Mississippi. *Id.* No web-based account access may be established unless an account is previously opened in person in the States of Louisiana, Texas or Mississippi. *Id.*

CTF has over 69,000 loan and deposit accounts. *Id.* Of those over 69,000 accounts, nine such accounts, representing six different customers, have current Kentucky addresses associated with the account. *Id.* Thus, just over 1/100[th] of 1% of such accounts have Kentucky addresses. *See id.* Each of these nine accounts

---

[1]   Although Community Trust Bank of Texas is a Texas banking corporation, it merged into Community Trust Bank effective the second half of 2010, as a result of a merger applied for by the Defendants in April, 2010, accepted by the FDIC on May 5, 2010, dates prior to the filing of this civil action (May 19, 2010), and approved by the FDIC on June 3, 2010. The merger was financially retroactive to January 1, 2010. Community Trust Bank of Texas was headquartered in Dallas, Texas until such time as the merger with Community Trust Bank became effective. Community Trust Financial Corporation is headquartered in Ruston, Louisiana. Community Trust Bank is headquartered in Choudrant, Louisiana.

was originally established by a customer or customer's agent, physically located in the State of Louisiana or Mississippi. *Id.* Only one of these accounts was opened with a Kentucky address; an employee of Defendant opened the account for her child after her child moved to Kentucky for school. *Id.* Of the six CTF customers holding accounts now associated with Kentucky addresses, two customers with current Kentucky addresses have not undertaken to establish access to any of their accounts through internet banking on the Website. *See id.* Thus, only four of the six have undertaken to establish internet banking access through the Website to their accounts located in Louisiana, Texas, or Mississippi. *Id.*

Hence, the internet banking feature of the Website only augments pre-existing CTF customer relationships. Petitioners have no control over where their customers move after establishing accounts with CTB. Based upon these facts, the Petitioners did not purposefully avail themselves of the privilege of conducting business in Kentucky and thus, lack sufficient jurisdictional contacts with the Commonwealth of Kentucky to be haled into its courts.

Accordingly, Petitioners moved the district court to dismiss the complaint for lack of personal jurisdiction, contending that any customers who happened to be Kentucky residents acquired that status as the sole result of those customers' unilateral activity, hence the e-mailing of online account access passwords to those customers did not constitute any purposeful availment on the part of Petitioners.

Nonetheless, the district court denied the motion on February 17, 2011, specifically finding personal jurisdiction based on the Petitioners' e-mailing of passwords to pre-existing customers who had subsequently moved to Kentucky. *See* February 17 Order (Appx. 1). Subsequently, the Petitioners moved the district court to amend its order to certify the order for appeal. The district court did so by Opinion and Order dated May 24, 2011 ("May 24 Order"; Appendix 2 hereto).

## REASONS WHY THE APPEAL SHOULD BE ALLOWED AND IS AUTHORIZED BY STATUTE OR RULE

On May 24, 2011, pursuant to 28 U.S.C. § 1292(b),[2] the district court amended its prior order denying Petitioners' motion to dismiss the complaint for lack of personal jurisdiction to state that it "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination

---

[2]   28 U.S.C. § 1292(b), which governs a motion for certification for immediate appeal, states: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

of the litigation." *See* May 24 Order (Appx. 2) at 8. In so doing, the district court agreed with Petitioners that the question of personal jurisdiction central to this case met the following four elements: (1) the question involved must be one of "law"; (2) it must be controlling; (3) there must be substantial ground for "difference of opinion" about it; and (4) an immediate appeal must materially advance the ultimate termination of the litigation. *Id. at 7-8*; *see also In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002); *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir.1974)).

This Petition is therefore authorized by statute, 28 U.S.C. § 1292(b). Having obtained the necessary certification for appeal from the district court, Petitioners now seek permission to appeal the district court's order denying Petitioners' motion to dismiss the complaint for lack of personal jurisdiction. Fed. R. App. P. 5. When considering a petition for permission to appeal, the Sixth Circuit requires the same four factors as required by the district court for the certification of a motion. *Id.* These requirements are discussed below.

## 1. The Question Of Personal Jurisdiction Is One Of Law.

The district court agreed with Petitioners that the question of personal jurisdiction is one of law, noting that there are no disputed facts at issue in this case. May 24 Order (Appx. 2) at 3. Indeed, interlocutory appeals are intended "for situations in which the court of appeals can rule on a pure, controlling question of

law without having to delve beyond the surface of the record in order to determine the facts." *Sanderson Farms, Inc. v. Gasbarro*, 2007 WL 3402539, *3 (S.D. Ohio 2007) (quoting *In re Pilch*, 2007 WL 1686308, at *4 (W.D. Mich. 2007)). Other courts have similarly noted that personal jurisdiction is an issue of law, not of fact. *See Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998); *United Rope Distributors, Inc. v. Kimberly Line*, 785 F. Supp. 446 (S.D.N.Y. 1992); *Zeneca v. Mylan Pharmaceuticals, Inc.*, 124 F.3d 225 (Fed. Cir. 1977). Further, the issue of personal jurisdiction is not within the discretion of the trial court, but instead is reviewed *de novo*. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Therefore, the issue of personal jurisdiction is a question of law and this element is satisfied.

2.      **The Question Of Personal Jurisdiction Is Controlling And Will Materially Affect The Outcome Of This Litigation.**

A legal issue is controlling in the Sixth Circuit if the "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citing *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n. 8 (6th Cir.1992)). Again, the district court agreed with Petitioners that the issue of personal jurisdiction would materially affect the outcome of the litigation: "[i]f the [district c]ourt's ruling should be reversed, this matter could

not continue in this [district c]ourt and would have to be dismissed." May 24 Order (Appx. 2) at 4. A reversal of the Court's finding of personal jurisdiction could materially affect the outcome of the litigation by precluding the need for litigation altogether; if the Petitioners are found not to be subject to personal jurisdiction in this forum, the district court litigation will cease. *See Eagan v. CSX Transp., Inc.,* 294 F. Supp. 2d 911, 915 (E.D. Mich. 2003). This result would save the parties the expense of litigation and ultimately, the resources of the Court. *See In re Big Rivers Elec. Corp.,* 266 B.R. 100, 104 (W.D. Ky. 2000); 16 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRAC. & PRO. § 3930 at 426 (2d ed. 1996). Because the question of personal jurisdiction, if resolved in favor of Petitioners on appeal, would ultimately materially affect the outcome of the litigation, this factor is satisfied.

3. **There Exists A Substantial Ground For Difference Of Opinion On The Controlling Question Of Law Relating To The District Court's Exercise Of Personal Jurisdiction Over Petitioners.**

Substantial grounds for differences of opinion can be shown when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Gaylord Entm't Co. v. Gilmore Entm't Group,* 187 F. Supp.2d 926, 956 (M.D. Tenn. 2001); *Eagan v. CSX Transp., Inc.,* 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003). The district court agreed with Petitioners that this issue of personal jurisdiction is difficult, by stating

that "the law regarding personal jurisdiction in the internet context is continually evolving," and as such, "there is substantial ground for difference of opinion as to whether the Petitioners' act of sending passwords to Kentucky residents to provide them with online banking services establishes a prima facie case of personal jurisdiction in this Court." May 24 Order (Appx. 2) at 7. Thus, by the district court's own admission, this issue is difficult and therefore satisfied. However, as further compelling evidence of this issue's need for immediate appeal, a difference of opinion exists within this Circuit, and the circuits are apparently split on the issue.

The due process analysis employed by the Sixth Circuit in determining the propriety of personal jurisdiction requires three elements to confer jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). These elements, and specifically the purposeful availment element, precludes a defendant from being haled into a jurisdiction solely as a result of

random, fortuitous, or attenuated contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

The precise issue in contention in the instant case, whether the actions of a third-party who has an established relationship with the Petitioners can subject Petitioners to personal jurisdiction in the forum state, has already been decided by a sister court within the Sixth Circuit, with a result contrary to the district court's order. *See Flagstar Bank, F.S.B. v. Freestar Bank, N.A.*, Civ. Action No. 08-10357, 2008 WL 4539389 (E.D. Mich. Oct. 7, 2008). The defendant in *Flagstar* was a community bank operating in Illinois. *Id. at *1*. After opening accounts in Illinois and establishing a relationship with the defendant bank, some customers moved to Michigan; the defendant bank continued to mail account statements and provide online banking services to these customers. *Id. at *2*. The court found these contacts were not even "minimum" contacts:

> The contacts the Defendant has with the State of Michigan are quintessential examples of instances in which it would be unreasonable for a court to exercise personal jurisdiction over an out-of-state party. As it applies to this litigation, the Court does not believe that the acts of mailing account statements and providing online access to those customers who opened accounts in Illinois and subsequently traveled to Michigan are examples of minimum contacts that may be considered to be a "purposeful availment." *Hanson, supra.* When a corporation sells a product or a service to a customer, it should not be held responsible for the customer's unilateral activity. Otherwise, "every seller of chattels

> would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980). Indeed, jurisdiction might be proper if there was any evidence in the record that the Defendant affirmatively acted to create accounts with Michigan residents by mail or through the internet. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (jurisdiction proper since contract solicited by defendant had substantial connection with forum).

*Id.* at *3. Indeed, the provision of online banking services to its customers were deemed "minimal and tenuous" contacts. *Id.*

In stark contrast to *Flagstar Bank*, the district court's February 17 Order (denying the Petitioners' motion to dismiss the complaint for lack of personal jurisdiction) found that the e-mailing of passwords to Kentucky residents was the linchpin in finding personal availment: "[t]he Defendants sent passwords to four Kentucky residents and they did it knowing and intending that the recipients would maintain their account in the Defendants' banks and continuously and systematically access those accounts to perform such functions as viewing their balance and paying bills." Feb. 17 Order (Appx. 1) at 7. The defendants in *Flagstar* also e-mailed passwords to their Michigan customers and presumably may even have created a contract with them to allow access to online accounts, yet the court in *Flagstar* did not even deem these facts important enough to warrant a mention in its dismissal of the action for a lack of personal jurisdiction. *See*

*Defendant Freestar Bank's Motion to Dismiss Complaint Under Rule 12(b)(2) for*

*Lack of Personal Jurisdiction and Under Rule 12(b)(3) and 28 U.S.C. § 1391(b)*

*for Improper Venue, or, Alternatively, to Transfer Under 28 U.S.C. § 1404(a)* at

15, *Flagstar Bank, F.S.B. v. Freestar Bank, N.A.,* No. 08-10357 (E.D. Mich. Mar.

5, 2008), 2008 WL 1749987 at Section I.B, *granted in Flagstar,* 2008 WL

4539389.

Thus, while the district court below found the e-mailing of passwords to

allow online access to bank accounts for established customers so important as to

tip the scales in favor of finding personal jurisdiction, another district court within

this Circuit did not consider that identical fact an important fact in its analysis,

instead finding that the mere provision of online banking services was insufficient

to confer personal jurisdiction. Thus, a difference of opinion exists within the

courts of this Circuit as to whether a bank's providing online access to its

established customers who subsequently move to the forum state constitutes

"purposeful availment."

Furthermore, on similar facts, a district court in Kansas also decided this

issue contrary to the district court's holding below, indicating a potential split of

authority between circuits. In *Capitol Federal Savings Bank v. Eastern Bank

Corp.,* 493 F. Supp. 2d 1150 (D. Kan. 2007), a bank located in Kansas sued a

banking corporation based in Massachusetts for, *inter alia,* service mark

infringement. The plaintiff's basis for personal jurisdiction rested substantially on defendant's interactive website, yet the court declined to exercise personal jurisdiction. *Id.* The *Capitol Federal* court found that customers residing in the forum state might support a finding of purposeful availment, yet the court specifically excluded those customers that were Massachusetts residents at the time they became customers of the defendant. *Id.* at 1163. Therefore, only customers who were forum residents at the time they became customers of the defendant showed an "intentionally established relationship" by the bank and thus, purposeful availment by the bank. *Id.*

Likewise, in the present case, all of Petitioners' current Kentucky customers are either former Louisiana residents who subsequently moved to Kentucky; former employees who now reside in Kentucky; or current employees' family members who now reside in Kentucky. These six contacts each previously established a relationship with Defendant by opening an account at a physical branch location in either Louisiana or Mississippi. The case law discussed above makes clear that these scant, random, and "fortuitous" contacts do not establish "minimum contacts" or the "purposeful availment" required to establish the district court's exercise of personal jurisdiction over Petitioners, making review of the district court's opinion appropriate.

Indeed, the February 17 Order agreed with the other district courts in stating "[t]he fact that some of the Defendants' customers moved to Kentucky after establishing their accounts is not the result of the Defendants' intentional activities. Instead, these accounts are the result of the kind of random, fortuitous and attenuated contacts and unilateral activity that cannot be a basis for personal jurisdiction." February 17 Order (Appx. 1) at 5. This important admission by the Court demonstrates how close a case this is on the issue of personal jurisdiction. Despite that admission, the district court then ultimately decided the question by holding that the sending of passwords to four existing customers with Kentucky addresses was sufficient to confer personal jurisdiction. *Id.* In casting the issue in that manner, the Court overlooked the controlling question in this case: whether the ongoing provision of services to established customers <u>who have moved to the forum state</u> are the type of random, fortuitous, or attenuated contacts that defeat personal jurisdiction analysis.

In an effort to support its holding, the district court expressly relied on *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883 (6th Cir. 2002), wherein this Court held that a Defendant who maintained a passive website, but e-mailed passwords to residents of the forum state, could be subject to jurisdiction in the forum state. However, a careful reading of *Neogen* reveals that this Court so held only because the defendant had <u>additional</u> jurisdictional contacts with the forum

state -- "[w]hether [the defendant's] website alone would be sufficient to sustain personal jurisdiction in [the forum state], however, is a close question that need not be decided in this appeal." 282 F.3d 883, 891 (6th Cir. 2002).

The present case affords this Court an opportunity to decide that "close question." Indeed, in the February 17, 2011 Order, the district court reiterated that this Court expressly declined to decide the "close question" of whether the granting of passwords to residents of the forum state as part of a contract for defendant's services involving use of a website would alone subject the defendant to personal jurisdiction in the forum state. February 17 Order (Appx. 1) at 7. Evidently, the district court proceeded to decide the question in the affirmative, but counter to other authority within this Circuit suggesting otherwise.

Accordingly, the present case affords the Court an opportunity to carefully consider whether the jurisdictional facts of this case are sufficiently aligned with those of *Neogen* to affirm the district court's finding of a *prima facie* case of personal jurisdiction here. This Court in *Neogen* considered its finding of personal jurisdiction to be a "close question" based on a website which contained mostly passive information, where the defendant mailed passwords to customers in the forum state, held itself out as doing business in the forum state (a circumstance distinguishable from the facts herein), and used data from customers in the forum state (a matter not of record herein). A careful reading of *Neogen* discloses that

this Court's finding of additional jurisdictional facts tipped the scales in favor of personal jurisdiction -- 14 yearly contracts with <u>new customers from the forum state</u> and the <u>expectation of a certain amount of business in the forum state.</u> *See Neogen*, 282 F.3d at 890-91.

The district court below expressly noted that the linchpin of personal jurisdiction in this case was the e-mailing of passwords to four Kentucky residents so to allow online access to internet banking. February 17 Order (Appx. 1) at 7. In contrast to the facts of *Neogen*, however, Petitioners do not hold themselves out as doing business in Kentucky, nor do they use data from Kentucky customers in statistics on their website, nor is CTB's website aimed at obtaining new customers from the forum state. The <u>only</u> relevant fact common to the defendant in *Neogen* and Petitioners in the instant case is the mere e-mailing of passwords.

This issue becomes all the more close and/or difficult taking account of the additional jurisdictional fact that, unlike the contacts in *Neogen,* **all** of Petitioners' customers now residing in the forum state originally established a banking relationship with the Defendant <u>outside</u> the forum state. Thus, Defendant was not making any new contacts in the forum state by e-mailing passwords to Kentucky residents. In other words, Defendant was not purposefully availing itself of the privilege of acting in Kentucky, but merely allowing its already-established

customers to virtually access their pre-existing accounts physically located outside the forum state.

Therefore, it is clear that whether the e-mailing of passwords to Kentucky residents alone supports personal jurisdiction is a "close question," i.e., a difficult question of law under the Sixth Circuit's standard applying 28 U.S.C. § 1292(b), and it is unsurprising that the district court certified the case for immediate appeal. Likewise, this Court has acknowledged, though not resolved, the "close question" of whether the website at issue in *Neogen* alone could confer personal jurisdiction. The controlling question of law at issue in the instant case shares only one similar fact with *Neogen*, and adds the jurisdictionally-significant wrinkle of previously-established contacts outside the forum state. Moreover, the same issue, on facts well-aligned with those of the present case, has already been decided to the contrary within this Circuit and in another district court outside the Circuit. Thus, there exist substantial grounds for difference of opinion under 28 U.S.C. § 1292(b), and this Court should grant Petitioners permission to appeal.

### 4. An Immediate Appeal May Materially Advance The Ultimate Determination Of The Litigation.

Particularly noting the traditional length and expense of trademark litigation, the district court found that the fourth factor was satisfied; if this Court finds that personal jurisdiction should not be exercised over the Petitioners because of their

lack of purposeful availment in Kentucky, the parties and the Court need not conduct a trial. *See* May 24 Order (Appx. 2) at 7; *see also Eagan v. CSX Transp., Inc.,* 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003) (finding that the possibility of not having a second trial if an appeal was granted fulfills the requirement that an immediate appeal advances the termination of the litigation, where the first trial involved "over twenty hours of testimony, numerous witnesses, and significant expenses to both parties") Trademark litigation is time-consuming and costly, especially due to extensive discovery. *See* Max Vilenchik, *Expanding the Brand: The Case for Greater Enforcement of Mandatory Mediation in Trademark Disputes,* 12 CARDOZO J. CONFLICT RESOL. 281, 284 (2010) ("[A] 2001 survey conducted by the American Intellectual Property Law Association (AIPLA) found that the average cost of a trademark dispute through trial is $502,000); *see also* Robert W. Pike, et al., Trademarks in 4 SUCCESSFUL PARTNERING BETWEEN INSIDE AND OUTSIDE COUNSEL § 69:27 (2010) ("Trademark litigation can be among the most expensive and protracted types of litigation, ... [s]uch litigation could involve discovery, and thus disclosure of sensitive documents such as marketing plans (marketing plans are often evidence of potential or actual confusion); it could involve company clients and customers; and it could involve a myriad of experts in marketing, consumer research, surveys and economics (on the issue of damages)").

Furthermore, should the Petitioners ultimately be found liable in this action, they would certainly appeal this jurisdictional issue. A reversal of the district court's February 17 Order denying the motion to dismiss would make unnecessary the total monetary expenditures, the time spent on discovery and other litigation-related activities, and the district court's scant resources that would be expended should a trial go forward. Moreover, in light of this Petition, the district court has granted Petitioners' request for a stay of the district court action pending the decision of this Court. Thus, the Petitioners submit that an immediate appeal would advance the ultimate determination of this litigation.

## CONCLUSION

For the foregoing reasons, the Court should grant Petitioners' Petition for Permission to Appeal pursuant to 28 U.S.C. § 1292(b) and docket this case for appellate review, and Petitioners respectfully request such action.

Respectfully submitted,

*[signature]*

Scot A. Duvall
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
401 S. Fourth Avenue
Louisville, Kentucky 40202-3410
(502) 584-1135 (Telephone)
(502) 561-0442 (Facsimile)

Dated: June 2, 2011

*Counsel for Petitioners,*
COMMUNITY TRUST FINANCIAL
CORPORATION, COMMUNITY TRUST
BANK, and COMMUNITY TRUST BANK
OF TEXAS

**APPENDICES SUBMITTED HEREWITH:**
(APPEARING AFTER CERTIFICATES OF FILING/SERVICE)

APPENDIX 1:     District Court's Opinion and Order dated February 17, 2011

APPENDIX 2:     District Court's Opinion and Order dated May 24, 2011

## CERTIFICATE OF FILING

I hereby certify that, pursuant to FED. R. APP. P. 25, an original and three copies of the foregoing Petition for Permission to Appeal is being dispatched to Federal Express for overnight delivery in an envelope addressed as follows, on this 2ND day of June 2011:

> Clerk of Court
> U.S. Court of Appeals for the Sixth Circuit
> 540 Potter Stewart U.S. Courthouse
> 100 East Fifth Street
> Cincinnati, Ohio 45202

_An Attorney for Petitioners_

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to FED. R. APP. P. 25, a true copy of the foregoing Petition for Permission to Appeal is being deposited with the United States Postal Service with sufficient postage as First-Class Mail in an envelope addressed to the following counsel of record, at the following address of record, on this 2ND day of June 2011:

> Michael S. Hargis, Esq.
> Trevor T. Graves, Esq.
> King & Schickli, PLLC
> 247 North Broadway
> Lexington, Kentucky 40507

_An Attorney for Petitioners_

# APPENDIX 1:

## District Court's Opinion and Order
## dated February 17, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO.  7:10-cv-062-KKC

COMMUNITY TRUST BANCORP., INC.,                                      PLAINTIFF,


v.                                **OPINION AND ORDER**


COMMUNITY TRUST FINANCIAL CORPORATION,
COMMUNITY TRUST BANK, and
COMMUNITY TRUST BANK OF TEXAS,                              DEFENDANTS.

\* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss filed by the Defendants [DE 15]. The primary issue raised by the motion is whether the Defendants' provision of online banking services to Kentucky residents subjects them to personal jurisdiction in this Court. For the following reason, the Court finds that it does.

## I.   INTRODUCTION.

The Plaintiff in this action is Community Trust Bancorp. Inc., a Kentucky corporation. It has provided banking and financial services since 1903.  Since at least since 1995, the Plaintiff has continuously used the mark COMMUNITY TRUST to promote its banking and financial services. Since 1998, it has operated a website using the domain name ctbi.com. Its website allows customers to conduct online banking, bill pay, and other financial transactions over the internet.

The Defendants are Community Trust Bank of Texas, which is a Texas corporation, and Community Trust Financial Corporation and Community Trust Bank, both of which are Louisiana corporations. Community Trust Bank and Community Trust Bank of Texas are wholly-owned subsidiaries of Community Trust Financial Corporation.

Like the Plaintiffs, the Defendants provide banking and financial services. Defendants use the marks COMMUNITY TRUST and COMMUNITY TRUST BANK and the trade names Community Trust Financial Corporation, Community Trust Bank, and Community Trust Bank of Texas. The Defendants also operate a website using the domain name ctbonline.com and the website displays the words "Community Trust."

The Plaintiff asserts that the Defendants' use of the COMMUNITY TRUST mark and related marks and trade names is likely to confuse consumers into believing that the Plaintiff is the operator of the Defendants' website or that the Plaintiff is affiliated with the Defendants' services. The Plaintiff asserts that the Defendants' use of these marks constitutes trademark infringement in violation of federal law, 15 U.S.C. § 1114(1) (the "Lanham Act"), and state law, KRS § 365.601. The Plaintiff also asserts that the Defendants' use of the marks constitutes false designation of origin under 15 U.S.C. § 1125(a). The Plaintiffs also move under 15 U.S.C. § 1119 for an order canceling the Defendants' U.S. Service Mark Registration for the mark COMMUNITY TRUST BANK.

The Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) arguing that this Court has no personal jurisdiction over them. Alternatively, they move to transfer this action under Rule 12(b)(3) arguing that this Court is not the proper venue. The Defendants further move under Rule 12(b)(6) to dismiss the Plaintiff's claim under KRS § 365.601 for failure to state a claim.

## II.   PERSONAL JURISDICTION.

## A.   STANDARD ON 12(b)(2) MOTION.

Neither party has asked the Court for discovery on the jurisdictional issue or for an evidentiary hearing. Thus, the Court will decide this motion on the basis of the pleadings and the affidavits submitted by the parties. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991);

2

*See also Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

At this stage, the Plaintiff must only establish a prima facie case for jurisdiction to prevent its claim from being dismissed. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). A prima facie showing means that the Plaintiff need only present enough facts to avoid a motion to dismiss. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)(quoting *Data Disc, Inc. v. Systems Technology, Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

In determining whether the Plaintiff has met this burden, the court must consider the pleadings and affidavits in a light most favorable to the Plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). A court is not required, however, to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

## B.   ANALYSIS.

When determining whether personal jurisdiction exists over a defendant, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)(citation omitted). "The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution." *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542 (6th Cir. 1993). Thus the single issue presented on a motion to dismiss for lack of personal jurisdiction is whether the jurisdiction sought by the plaintiffs is within the requirements of due process. *Id.* at 543; *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir. 1982).

"[T]he Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615-16 (6th Cir.2005)(quotations and citation omitted).

The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction. *Fortis Corporate Ins. v. Viken Ship Management*, 450 F.3d 214, 218 (6th Cir.2006). General jurisdiction over a nonresident requires a showing of continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir.1998).

The Plaintiff does not argue that this Court has general jurisdiction over the Defendants. The following criteria are used to determine if this Court has specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

On the first element – purposeful availment – the question is whether the Defendants themselves took actions in Kentucky that create a "substantial connection" with the state so that they "should reasonably anticipate being haled into court there." *Neogen v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)(citations and quotations omitted). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (citations and quotations omitted). The Defendants have no officers, directors, employees, agents or any physical presence in Kentucky.

4

Their branch offices are located only in Texas, Louisiana, and Mississippi and their advertising and marketing campaigns are directed solely at residents of those states.

The Defendants do have Kentucky customers. Nine of the Defendants' 69,000 accounts, representing six different customers, have Kentucky addresses associated with them. However, each of the accounts with a Kentucky address was originally established by a customer physically located in Louisiana, Texas or Mississippi. Indeed, in order to establish an account with the Defendants, it is necessary to visit one of their branch offices in Louisiana, Texas, or Mississippi.

For all but one of the accounts with a Kentucky address, the customer moved to Kentucky after opening the account. The remaining account was set up by one of the Defendants' employees in Mississippi for that employee's child who had already moved to Kentucky to attend school.

If the existence of these accounts with Kentucky addresses were the Defendants' only contacts with Kentucky, then this Court could not exercise jurisdiction over the Defendants. The fact that some of the Defendants' customers moved to Kentucky after establishing their accounts is not the result of the Defendants' intentional activities. Instead, these accounts are the result of the kind of random, fortuitous and attenuated contacts and unilateral activity that cannot be a basis for personal jurisdiction.

However, the mere existence of Kentucky accounts is not the Defendants' only contacts with Kentucky residents. There are also four Kentucky residents who have signed up for online banking through the Defendants' website. As to whether a website can establish jurisdiction, the Sixth Circuit has held that "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890. (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)).

The *Zippo* case cited by the Sixth Circuit in *Neogen* has been called "[t]he seminal authority for evaluating the extent to which Internet contacts may establish personal jurisdiction." *Capitol Federal Savings Bank v. Eastern Bank Corporation*, 493 F.Supp.2d 1150, 1159 (D. Kan. 2007). It established a "sliding scale" for evaluating whether a defendant's website subjects it to personal jurisdiction in the plaintiff's chosen forum. At one end of the scale is a website through which the defendant enters into contracts with residents of the forum state that involve "the knowing and repeated transmission of computer files over the Internet." Such a website clearly subjects the defendant to personal jurisdiction in the forum. *Zippo*, 952 F.Supp. at 1124.

At the other end of the scale are "passive" websites where the defendant "has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.* "A passive Webvsite that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Id.*

Between the two extremes is the "middle ground" of "interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

In this case, individuals who have established bank accounts at the Defendants' branch offices can access their accounts online by obtaining a password through the website. In order to obtain a password, each customer must fill out an application indicating his address. [DE 20, Reply, Ex. 1, Kendrick Aff. Ex. 2, Online Banking Registration]. The customer must also agree to the Defendants' Online Service Agreement. Four of the Defendants' six customers with Kentucky addresses have obtained such passwords. All four of these Defendants had Kentucky addresses at the time they obtained the passwords. [DE 20, Reply, Ex. 1, Kendrick Aff. Ex. 1, Accounts with

Kentucky Addresses].

In *Neogen*, the Sixth Circuit stated that "[t]he granting of passwords to Michigan residents as part of a contract for [the defendant's] services is an interactive usage showing that [the defendant] has intentionally reached out to Michigan customers and enabled them to use {the defendant's] services from Michigan." *Id.* at 890-91.

In that case, the Sixth Circuit expressly declined to decide the "close question" of whether the website at issue would alone subject the defendant to personal jurisdiction in Michigan. *Id.* at 891. This was because the defendant had 14 yearly contracts with Michigan customers and the evidence showed that the defendant expected a certain amount of business in Michigan each year. *Id.* The fact that the defendant expected to conduct a "given level of business year after year" in Michigan showed the defendant's "intent to maintain 'continuing relationships and obligations' in Michigan," *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), "such that its activities there are 'continuous and systematic.'" *Int'l Shoe*, 326 U.S. at 317.

In this case, when the Defendants sent passwords to Kentucky residents, this was intentional activity to permit Kentucky residents to continue to maintain accounts in the Defendants' banks and to use the Defendants' online services from Kentucky. The Defendants' sending of the passwords was not an "isolated" or "one shot" transaction as was the case in *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). The Defendants sent passwords to four Kentucky residents and they did it knowing and intending that the recipients would maintain their account in the Defendants' banks and continuously and systematically access those accounts to perform such functions as viewing their balance and paying bills.

In this way, this case differs from *Capitol Federal Savings Bank v. Eastern Bank Corp.*, 493 F.Supp.2d 1150 (D. Kan. 2007) which the Defendants cite. That case addressed the issue of personal

7

jurisdiction of a Kansas court over a bank which had offices and branches only in Massachusetts. Similar to this case, some Kansas residents had accounts with the bank. The court found that the online banking services did not constitute contact with the forum state for jurisdictional purposes. However, there was no evidence that any Kansas customer had actually signed up for the online banking services. *Id.* at 1162.

The court recognized that the provision of online banking services "could involve the exchange of information sufficient to render the exercise of jurisdiction constitutional," but found that, because there was no evidence that any Kansas customers actually received the services, the plaintiff bank had failed to establish "a nexus between the online banking service offered by [the defendant bank] and any of its Kansas customers." *Id.* In this case, the Plaintiff has established that nexus.

The Defendants point out that the number of Kentucky residents with accounts at the bank is a small percentage of the Defendants' 69,000 total accounts. The number of Kentucky residents who have received passwords to conduct online banking from Kentucky is even smaller. However, what matters is not the percentage of the business but whether "the absolute amount of business conducted by [the defendant] in [the forum state] represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen*, 282 F.3d at 892 (citing *Burger King*, 471 U.S. at 475). "[E]ven a single contact can be sufficient." *Zippo*, 952 F.Supp. at 1127. "The test has always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts." *Id.*

The passwords enable the Defendants to continuously interact with the Kentucky recipients for years. With these acts, the Defendants reached out beyond Louisiana, Texas, and Mississippi and created "continuing relationships and obligations" with Kentucky residents. *Burger King*, 471 U.S.

8

at 473.

It is true that the Defendants have not promoted their banking services in Kentucky. However, the fact that Kentucky residents continue banking with the Defendants even after moving to Kentucky is not random or fortuitous. The Defendants' act of sending a password to Kentucky residents to permit them to engage in online banking reveals a specific intention to interact with these customers even after they became Kentucky residents. *Neogen*, 282 F.3d at 890.

The Kentucky long-arm statute provides that a court may exercise personal jurisdiction over any person as to a claim arising from the person's "transacting any business in this Commonwealth." KRS § 454.210(2)(a)(1). The Defendants argue that their activities in Kentucky do not constitute "transacting any business" in Kentucky for purposes of the state's long-arm statute. For this argument, the Defendants rely on KRS § 286.2-670.

That statute provides that certain activities by non-Kentucky banks, including loaning money that is secured by a mortgage on real property in Kentucky and maintaining bank accounts in banks authorized to transact a banking business in the state, does not constitute "transacting business" in this state. At least two courts have interpreted the statute to provide that foreign banks cannot be subject to personal jurisdiction in Kentucky for conducting those activities. *Jude v. First National Bank of Williamson*, 259 F.Supp.2d 586, 591 (E.D.Ky. 2003); *Bank of Louisville v. California First Bank*, 641 F.Supp. 59, 61 (W.D. Ky. 1986).

In this case, the Court has determined that the Defendants are subject to this Court's jurisdiction for providing banking services to Kentucky residents other than loaning money secured by a mortgage. Thus, the subsection of KRS § 286.2-670 addressing that activity is immaterial. The Defendants briefly argue that their provision of banking services to Kentucky residents should not be deemed to be "transacting any business" because it constitutes "the maintenance of bank accounts

9

in banks authorized...to do...a banking business in this state" as provided in subsection 1(i) of under KRS § 286.2-670 . However, this subsection does not exempt the provision of banking services from the definition of transacting business. Instead it provides that a foreign bank shall not be deemed to be transacting business in Kentucky simply because it maintains a bank account in a bank authorized to do business in this state.

Furthermore, even if the Defendants' activities should not be deemed to be "transacting any business" in the state for purposes of the long-arm statute, that statute also provides for personal jurisdiction over a person for "contracting to supply services or goods in this Commonwealth." KRS § 454.210(2)(a)(2). Each Kentucky resident that has signed up for online banking also agreed to the terms of the Defendants' Online Service Agreement.

The next issue is whether the Plaintiff's cause of action arises from the Defendants' activities in Kentucky. This is a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996)). This factor "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Id.* (quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989)).

The Plaintiff alleges that the Defendants committed trademark violations by using the mark COMMUNITY TRUST on their website. This cause of action has a substantial connection to the Defendants' activities of providing online banking services to Kentucky residents through the Defendants' website.

This case differs from *Capitol Federal* where the court determined that a Massachusetts bank had purposefully availed itself of the privilege of doing business in Kansas when it established

10

accounts for Kansas residents, 493 F.Supp.2d at 1163, but that the plaintiff bank's trademark infringement claim did not arise out of or relate to the Massachusetts bank's relationship with its Kansas customers. In that case, there was no evidence that any Kansas customer had actually signed up for online banking. Thus, the trademarks appearing on the defendant bank's website were irrelevant. Instead, the contacts between the Massachusetts bank and its Kansas customers were monthly statements mailed to the customers and the trademark at issue did not appear on the statements. *Id.* at 1164. In this case, in contrast, the Defendants provide online banking to Kentucky residents through their website and the website displays the mark at issue.

Finally, the acts of the Defendants must have a substantial enough connection with Kentucky to make the exercise of jurisdiction over the Defendants reasonable. Where there is a finding of purposeful availment and that the cause of action arose from the defendant's contacts with the forum state, an inference arises that this third factor is also met. *CompuServe,* 89 F.3d at 1268. Factors relevant to the reasonableness inquiry include, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

Although the Defendants may be more burdened by defending a lawsuit in Kentucky than in Louisiana, Texas or Mississippi, this state has a legitimate interest in protecting the business interests of its citizens. The Plaintiff has an obvious interest in obtaining relief and, although the states where the Defendants' branches are located may also have an interest, that does not make jurisdiction by this Court unreasonable.

### III.   VENUE.

Defendant also seeks dismissal for improper venue pursuant to Fed.R.Civ.P. Rule 12(b)(3). Neither party has addressed which party bears the burden on such a motion. The Sixth Circuit has

not directly addressed this issue and district courts within this circuit have taken different approaches. *See, e.g., Wax v. Stein World, L.L.C.*, No. 1:07CV3253, 2008 WL 2227350 at *1 (N.D.Ohio 2008)("the plaintiff bears the burden of proving that venue is proper"); *Kelly Servs. v. Eidenes*, 530 F.Supp.2d 940, 948 (E.D.Mich.2008)(movant bears the burden of establishing that venue is improper). Other circuit courts have similarly disagreed about whether the burden to establish that venue is proper should be placed on the plaintiff or the movant. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3rd Cir.1982)(assigning the burden to movant); *but see Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir.2005)(assigning the burden of proof to plaintiff).

This Court has taken the position that, because a motion to dismiss for improper venue challenges whether the forum is a fair one for the defendant under the federal venue statute and because improper venue is an affirmative defense, the defendant bears the burden of proving improper venue. *Long John Silver's, Inc. v. Diwa III, Inc.*, 650 F.Supp.2d 612, 631 (E.D.Ky.2009). In this case, the outcome would be the same no matter which party has the burden.

Title 28 U.S.C. § 1391(b) provides in pertinent part that a civil action such as this "wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In its Complaint, the Plaintiff asserts that this Court is the proper venue under subsection (2) because a substantial part of the acts of infringement or unfair competition occurred here. Courts have found that venue is proper in Lanham Act cases "where the infringing activity occurred," *Nine*

*Pt. Mesa of Nashville, Inc. v. Nine Pt. Mesa of Lexington, Inc.*, 769 F.Supp. 259, 261 (M.D.Tenn.1991), where the "passing off" occurred., *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995), or in the district where "confusion about the origin of [the trademark owner's] product [is] likely to occur." *Antioch Co. v. Pioneer Photo Albums, Inc.*, No. C-3-99-270, 2000 WL 988249, at *6 (S.D.Ohio Mar.13, 2000); *see also IA, Inc. v. Thermacell Techs., Inc.*, 983 F.Supp. 697, 700 (E.D.Mich.1997).

The Plaintiff alleges that the Defendants used the COMMUNITY TRUST mark on their website which is accessible and is accessed by Kentucky residents. Further, the Plaintiff alleges that Kentucky residents, including those in the Eastern District of Kentucky, will likely be confused by the Defendants' use of the mark at issue. Accordingly, this is the proper venue.

## IV.     MOTION TO DISMISS UNDER RULE 12(B)(6).

The Defendants also move under Rule 12(b)(6) to dismiss the Plaintiff's claim that the Defendants have violated KRS 365.601 which provides:

> Subject to the provisions of KRS 365.601, any person who:
>
> (1) Uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under KRS 365.561 to 365.613, or under KRS 365.560 to 365.625 prior to their repeal, in connection with the sale, distribution, offering for sale, or advertising of any goods or services which is likely to cause confusion or mistake or to deceive as to the source or origin of the goods or services; or
>
> (2) Reproduces, makes, counterfeits, copies or colorably imitates any mark and applies the reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale or other distribution in this state of the goods or services;
>
> shall be liable in a civil action by the registrant for any of the remedies provided in KRS 365.603, except that under subsection (2) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with the intent to cause confusion or mistake or to deceive.

13

The Defendants argue that the Plaintiff's claim under this statute should be dismissed because the Plaintiff did not plead in its Complaint that it owns any mark registered in Kentucky. In response, the Plaintiff asserts that it owns Kentucky Service Mark Registration Certificate No. 013488.02 for the mark COMMUNITY TRUST. In reply, the Defendants continue to argue that, because the Plaintiffs failed to state in their Complaint that they registered the mark COMMUNITY TRUST in Kentucky, the Plaintiff's claim under KRS 365.601 should be dismissed.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id* ; *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)). "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true ...." *Twombly*. 550 U.S. at 555-56 (citations omitted). "Facial plausibility" requires the plaintiff to plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable factual inferences in plaintiff's favor. *Total*

14

*Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008).

The Complaint does not contain a specific assertion that Plaintiff owns a mark registered in Kentucky. However, a fair inference can be drawn from the Complaint that Plaintiff owns such a registered mark.

Furthermore, even post-*Twombly*, "[w]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *Brown v. Matauszak*, 2011 WL 285251, at * 6 (6th Cir. January 31, 2011)(quoting *PR Diamonds, Inc., v. Chandler*, 364 F.3d 671, 698 (6th Cir.2004)). The Court will not dismiss the Complaint or order the Plaintiff to amend its Complaint in this case because it finds that ownership of a registered mark in Kentucky is a fair inference. However, to the extent that the Defendants feel a more definite statement of the Complaint is necessary, the Defendants may file a motion to that effect.

## V.    CONCLUSION.

For all these reasons, the Court hereby ORDERS that the Defendants' Motion to Dismiss [DE 15] is DENIED.

Dated this 17th day of February, 2011.

**Signed By:**

*Karen K. Caldwell*

**United States District Judge**

15

# APPENDIX 2:

## District Court's Opinion and Order
### dated May 24, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO.  7:10-cv-062-KKC

COMMUNITY TRUST BANCORP., INC.,                                    PLAINTIFF,

v.                                    **OPINION AND ORDER**

COMMUNITY TRUST FINANCIAL CORPORATION,
COMMUNITY TRUST BANK, and
COMMUNITY TRUST BANK OF TEXAS,                              DEFENDANTS.

* * * * * * * *

This matter is before the Court on the Defendants' motion to certify this matter for immediate appeal and to stay this matter pending appeal. [DE 25].

**I.    Background.**

The Plaintiff in this action is Community Trust Bancorp. Inc., a Kentucky corporation. It has provided banking and financial services since 1903.  Since at least since 1995, the Plaintiff has continuously used the mark COMMUNITY TRUST to promote its banking and financial services. Since 1998, it has operated a website using the domain name ctbi.com.  Its website allows customers to conduct online banking, including paying bills and other financial transactions, over the internet.

The Defendants are Community Trust Bank of Texas, which is a Texas corporation, and Community Trust Financial Corporation and Community Trust Bank, both of which are Louisiana corporations. Community Trust Bank and Community Trust Bank of Texas are wholly-owned subsidiaries of Community Trust Financial Corporation.

Like the Plaintiffs, the Defendants provide banking and financial services. Defendants use the marks COMMUNITY TRUST and COMMUNITY TRUST BANK and the trade names

Community Trust Financial Corporation, Community Trust Bank, and Community Trust Bank of Texas. The Defendants also operate a website using the domain name ctbonline.com and the website displays the words "Community Trust."

The Plaintiff asserts that the Defendants' use of the COMMUNITY TRUST mark and related marks and trade names is likely to confuse consumers into believing that the Plaintiff is the operator of the Defendants' website or that the Plaintiff is affiliated with the Defendants' services. The Plaintiff asserts that the Defendants' use of these marks constitutes trademark infringement in violation of federal law, 15 U.S.C. § 1114(1) (the "Lanham Act"), and state law, KRS § 365.601. The Plaintiff also asserts that the Defendants' use of the marks constitutes false designation of origin under 15 U.S.C. § 1125(a). The Plaintiffs also move under 15 U.S.C. § 1119 for an order canceling the Defendants' U.S. Service Mark Registration for the mark COMMUNITY TRUST BANK.

The Defendants moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) arguing that this Court has no personal jurisdiction over them. Alternatively, they moved to transfer this action under Rule 12(b)(3) arguing that this Court is not the proper venue. The Defendants further moved under Rule 12(b)(6) to dismiss the Plaintiff's claim under KRS § 365.601 for failure to state a claim.

On February 17, 2011, this Court entered an Opinion and Order denying all of the Defendants' motions. [DE 21]. The Defendants now move for this Court to certify for immediate appeal that portion of the Court's Opinion and Order finding that the Plaintiff had established a *prima facie* case of personal jurisdiction over the Defendants and denying the motion to dismiss for lack of personal jurisdiction.

## II.   Analysis.

Title 28 U.S.C. § 1291 provides for appeal to the courts of appeals only from "final decisions

2

of the district courts of the United States." However, 28 U.S.C. § 1292(b) grants the district court

discretion to certify certain issues for interlocutory appeal. *Id.* at 47. Section 1292(b) provides that

a district court may certify an issue for interlocutory appeal if the following conditions are met:

> (b) When a district judge, in making in a civil action an order not
> otherwise appealable under this section, shall be of the opinion that
> such order involves a controlling question of law as to which there is
> substantial ground for difference of opinion and that an immediate
> appeal from the order may materially advance the ultimate
> termination of the litigation, he shall so state in writing in such order.
> The Court of Appeals which would have jurisdiction of an appeal of
> such action may thereupon, in its discretion, permit an appeal to be
> taken from such order, if application is made to it within ten days
> after the entry of the order: Provided, however, That application for
> an appeal hereunder shall not stay proceedings in the district court
> unless the district judge or the Court of Appeals or a judge thereof
> shall so order.

Thus, in order to certify an issue for interlocutory appeal, four conditions must be met: "(1)

The question involved must be one of law; (2) it must be controlling; (3) there must be substantial

ground for difference of opinion about it; and (4) an immediate appeal must materially advance the

ultimate termination of the litigation." *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, (6th

Cir. 1974)(internal quotation marks omitted). "Review under § 1292(b) is granted sparingly and

only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

### A.   Whether the Court's Opinion Involves a Controlling Question of Law.

Neither party requested an evidentiary hearing or discovery on the issue of personal

jurisdiction. Thus, this Court did not conduct a hearing and determined only that the Plaintiff made

a prima facie showing of personal jurisdiction. This is a question of law. In determining whether

the plaintiff has made a prima facie showing of jurisdiction, the Court is required to resolve any

factual conflicts in the plaintiff's favor. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Further,

in this particular matter, there is no dispute as to the relevant facts.

3

"A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351. This Court's determination that the Plaintiffs have made a prima facie showing of personal jurisdiction over the Defendants could materially affect the outcome of the case. The Court's opinion allowed this matter to continue in this Court. If the Court's ruling should be reversed, this matter could not continue in this Court and would have to be dismissed.

**B.      Whether there is a Substantial Ground for Difference of Opinion**

The Defendants assert that there is substantial ground for a difference of opinion on two issues raised by this Court's personal jurisdiction determination. First, the Defendants contest this Court's statement that "the single issue presented on a motion to dismiss for lack of personal jurisdiction is whether the jurisdiction sought by the plaintiffs is within the requirements of due process." There is no substantial ground for difference of opinion on this point.

In *Tobin v. Astra Pharmaceutical Products Inc.*, 993 F.2d 528 (6th Cir. 1993), the United State Court of Appeals for the Sixth Circuit explicitly stated the following:

> The Court of Appeals of Kentucky, then the highest court of the commonwealth, recognized that this long-arm statute "was designed to extend the permissible scope of jurisdiction over foreign corporations with minimal contact in Kentucky." *Ford Motor Credit Co. v. Nantz*, 516 S.W.2d 840, 842 (Ky.1974). The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution. *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1271 (6th Cir.1984) (citing *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1192 (6th Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980)). Thus, the single issue is whether the jurisdiction sought is within the requirements of due process.

*Id.* at 543.

Later, in *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998), the Sixth Circuit explicitly stated the following:

> When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *See Kerry Steel*

4

*v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir.1997). Often this rule requires the court to determine whether both the state's long-arm statute and the Due Process Clause of the United States Constitution permit the exercise of jurisdiction. But when a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court "need only determine whether the assertion of personal jurisdiction ... violates constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996). Because Kentucky has construed its long-arm statute to extend as far as the Due Process Clause, *see Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky.1992), we may confine ourselves to this single inquiry.

*Id.* at 627.

The Defendants do not directly challenge these clear statements by the Sixth Circuit. Instead, they argue that this Court only "*has discretion* to merge the long-arm inquiry into the due process inquiry...." [DE 15 at 6]. Even if this were an accurate statement of the law, the Defendants do not explain the parameters of the court's discretion or how this Court's opinion was somehow beyond those parameters.

Finally, and perhaps most importantly, if the Defendants are arguing that this Court was required to determine *both* whether the Defendants' conduct fell within one of the provisions of the Kentucky long-arm statute *and* whether they had the requisite minimum contacts with this state to satisfy due process, this Court did both. It determined that the provision of banking services to Kentucky residents constitutes "transacting any business in this Commonwealth" under KRS § 454.210(2)(a)(1). It further determined that, when the Defendants contracted with Kentucky residents to provide online banking services through "Online Services Agreements," the Defendants "contract[ed] to supply services. . .in this Commonwealth" under KRS 454.210(2)(a)(2).

Defendants concede that they are "[p]roviding banking services to Kentucky residents" and that they "enter[ed] into a contract with Kentucky residents" to provide those banking services. [DE 25 at 9]. However, they argue that these actions do not constitute "transacting any business in this

5

Commonwealth" or "contracting to supply services...in this Commonwealth." They cite no case law for that proposition and, thus, this Court cannot find there is substantial ground for a difference of opinion on whether providing banking services to Kentucky residents falls within the specific provisions of Kentucky's long-arm statute.

Defendants next argue that there is substantial ground for difference of opinion as to this Court's determination that "[t]he Defendants' act of sending a password to Kentucky residents to permit them to engage in online banking reveals a specific intention to interact with these customers even after they became Kentucky residents." [DE 21 at 9].

The Court remains confident in this determination. There is no dispute that, in order to obtain a password to receive online banking services from the Defendants, each Kentucky resident filled out an application providing his Kentucky address. It was only after receiving that information that the Defendants sent the Kentucky residents a password which would permit them to receive banking services in Kentucky. The Defendants' application for online banking services does not limit users to inputting only Mississippi, Arkansas or Texas addresses as it could have done.

Nevertheless, the Court recognizes that the law regarding personal jurisdiction in the internet context is continually evolving. Accordingly, the Court finds that there is substantial ground for difference of opinion as to whether the Defendants' act of sending passwords to Kentucky residents to provide them with online banking services establishes a prima facie case of personal jurisdiction in this Court.

### C.     Whether Immediate Appeal may Materially Advance the Ultimate Termination of this Litigation.

A reversal of the Court's decision on the issue of whether the Plaintiff has made a prima facie showing of personal jurisdiction over the Defendant would completely terminate this action

and bar any further proceedings, thus, eliminating the need for discovery and a trial. Therefore, the Court finds that this litigation may be materially advanced by certifying the issue of personal jurisdiction for interlocutory appeal.

The Court recognizes that, thus far, it has only ruled that the Plaintiff has established a prima facie case of personal jurisdiction and that this is not necessarily the last word in this case on personal jurisdiction. The Defendants can raises the jurisdictional issue later in this action. *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (even if court issues pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense; a threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial from proving the facts upon which jurisdiction is based by a preponderance of the evidence); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)(defendant "can raise jurisdictional arguments during the trial as well. It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction"); *Neogen Corp. v. U.S. Dept. of Justice*, 2006 WL 3422691, at * 7 n.4 (E.D. Ky. 2006).

Nevertheless, reversal of this Court's decision that a prima facie case of jurisdiction exists would completely deprive this Court of jurisdiction and result in dismissal of this action. This is particularly significant in trademark litigation which can be quite lengthy and expensive. For these reasons, the Court will also stay the proceedings in this Court pending the decision of the Court of Appeals.

### III.     Conclusion.

Accordingly, it is hereby ORDERED as follows:

1)     the Defendants' Motion to Amend the Court's Opinion and Order of February 17, 2011 to Certify for Immediate Appeal and for Stay of Proceedings Pending Appeal

[DE 25] is GRANTED;

2)      the February 17, 2011 Opinion and Order is AMENDED to state that it involves a

controlling question of law as to which there is substantial ground for difference of

opinion and that an immediate appeal from the order may materially advance the

ultimate termination of this litigation; and

3)      this action is STAYED pending the Court of Appeals' resolution of this issue.

Dated this 24th day of May, 2011.

Signed By:

*Karen K. Caldwell*

United States District Judge